**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JORGE SANCHEZ,
Plaintiff,

v. Case No. 3:26-cv-32 (OAW)

WARDEN J. REIS, et al.,
Defendants.

**INITIAL REVIEW ORDER**

Self-represented Plaintiff Jorge Sanchez, a sentenced inmate at Cheshire Correctional Institution ("Cheshire CI"),[1] has filed a complaint under 42 U.S.C. § 1983 alleging that DOC employees Warden J. Reis, Deputy Warden M. Domitrz, Deputy Warden Soley, District Administrator Rodriguez, and ADA Coordinator Colleen Gallagher violated his rights under federal law. He seeks a declaration that his constitutional rights were violated, a preliminary and permanent injunction ordering Defendants to install or restore seats in the handicap showers, and compensatory and punitive damages.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion thereof, which is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b). The court has

[1] Plaintiff was sentenced to sixty years' imprisonment on June 14, 1996, and currently is housed at Cheshire CI. *See* DOC, Offender Information Search, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304309 (last visited Oct. 29, 2026). The court may take judicial notice of this website. *See, e.g.*, *Taveras v. Semple*, No. 15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC inmate locator).

thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

For the reasons articulated below, the case may proceed on Plaintiff's official capacity claims against Defendants ADA Coordinator Colleen Gallagher, District Administrator Rodriguez, and Deputy Warden Soley in their official capacities **only** for Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act **only.**

## I. FACTUAL BACKGROUND

While the court does not set forth all the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its ruling below.

On July 7, 2025, members of Plaintiff's family called Cheshire CI and informed Plaintiff's counselor and all three prison wardens that Plaintiff's grandmother was in hospice at a Bridgeport hospital and only had a short time to live. ECF No. 1, at 3. Plaintiff alleges that prison administration repeatedly rescheduled his appointment to see his grandmother, finally scheduled him to see her on July 11, 2025, but then the warden changed the date to July 14, 2025, "out of the blue." *Id*. Sadly, Plaintiff's grandmother passed away on July 12, 2025, two days before Plaintiff's rescheduled July 14th visit. *Id*.

While taking a shower later that day (the 12th), Plaintiff became overwhelmed with thoughts about his grandmother's passing, "felt faint," and "reached for the grab-bars to keep from falling." *Id.* Plaintiff missed the grab-bars and fell, leading to injuries to his left hand, hip, and knee, including a "tendon that's sticking out of [his] left hand that's painful and [his] range of motion is limited." *Id*. at 3–4. (cleaned up). After visiting an orthopedic doctor, Plaintiff started wearing a knee brace to "keep [his] knee from moving around"

and now takes a higher dose of pain medication than was previously necessary. *Id.* at 4.

Plaintiff suffers from "a sharp pain from [his] hip to his knee and [his] left leg gives out on [him] when he put[s] to[o] much pressure on [his] knee." *Id.* His hip and knee pain prevent him from standing too long, so he needs to sit while showering, and he sits on two milk crates because his plastic chair cannot fit in the shower. *Id.*

Plaintiff alleges he wrote to Defendant Gallagher, the Disability Rights Coordinator, "about some shower issues," but nothing ever happened,[2] *id.* at 4; that he submitted multiple grievances but "[A]dmin just denies or rejects them," *id.*, and that he appealed the administrative decision by District Administrator Rodriguez, who told Plaintiff that he could appeal or file a "separate CN9602, Inmate grievance for each issue," *id.* at 5.

Plaintiff contends he did as instructed but that his grievance still was rejected by Deputy Warden V. Soley because he did not file his grievance within thirty days of the occurrence. *Id.* He further claims he filed his first grievance on July 12, 2025, the very day he fell, and that he filed an appeal on September 24, 2025, but he never received a timely response. *Id.*

Plaintiff seeks a declaration that his constitutional rights were violated, a preliminary and permanent injunction ordering Defendants to install or replace handicap seats in the handicap showers, and compensatory and punitive damages. *Id.* at 7.

## II. <u>DISCUSSION</u>

---

2 The Disability Rights Coordinator, Colleen Gallagher, sent Plaintiff a letter informing him that he should consider bringing to DOC a wheelchair he was authorized to use in the community prior to his imprisonment, noting that paperwork would be needed for its authorization. *See* ECF No. 1, at 13.

Construing Plaintiff's *pro se* complaint liberally, *see Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted), Plaintiff appears to bring Eighth and Fourteenth Amendment claims under 42 U.S.C. § 1983, as well as claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The court addresses Plaintiff's claims in turn.

**A. <u>Section 1983 Claims</u>**

The court construes Plaintiff's complaint as raising an Eighth Amendment deliberate indifference to medical needs claim pertaining to his hip and knee injuries, an Eighth Amendment conditions of confinement claim, and a Fourteenth Amendment due process claim regarding his inability to visit his grandmother on hospice. Plaintiffs may bring these claims via 42 U.S.C. § 1983.

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501

(2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)) (internal quotation marks omitted). "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Rivera v. Viger*, No. 21-cv-00470 (VAB), 2021 WL 3269095, at *3 (D. Conn. July 30, 2021) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). A plaintiff must show personal involvement of supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must not rely on a "special test for supervisory liability").

### *1. Eighth Amendment-Medical Deliberate Indifference*

The Supreme Court of the United States has held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must show (1) that he has a condition that poses an unreasonable risk of serious damage to his health (the objective element); and (2) that a defendant acted with deliberate indifference to that serious condition (the subjective element). *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017).

Under the objective prong, for a deprivation of medical care to qualify as "sufficiently serious" it must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). The objective inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."

*Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Courts consider factors such as "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Under the subjective prong, the charged officials must be subjectively reckless in their denial of medical care by acting or failing "to act while *actually aware* of a substantial risk that serious inmate harm will result." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 280) (emphasis in original). Notably, they "need only be aware of the risk of harm, not intend harm." *Id.* Awareness may be proven "from the very fact that the risk was obvious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). But allegations of negligence or medical malpractice are insufficient. *See Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (citation modified).

To the extent Plaintiff brings an Eighth Amendment claim for deliberate indifference to his hip and knee injuries, he has failed to plead a plausible claim. Presuming Plaintiff's injury is sufficiently serious to satisfy the objective prong, he cannot satisfy the subjective prong because he alleges that after his fall, he was treated by a doctor, prescribed pain medication, and given a knee brace. ECF No. 1, at 4. He does not allege denial of treatment, nor that Defendants were aware of and disregarded a substantial risk of harm to him. Thus, any Eighth Amendment claim for deliberate indifference to medical needs is dismissed.

### 2. *Eighth Amendment & Fourteenth Amendment – Hospice Visit*

Plaintiff also appears to bring an Eighth Amendment and Fourteenth Amendment due process claim related to his inability to visit his grandmother in hospice. Plaintiff's inability to visit his grandmother directly relates to his conditions of confinement. To demonstrate an Eighth Amendment violation involving prison conditions, "the alleged punishment must be "objectively, sufficiently serious," and under the subjective component, the "state of mind is one of deliberate indifference to inmate health or safety." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotations and citations omitted).

Generally, there is no constitutional right to attend memorial services while incarcerated. *Belton v. Cnty. of Nassua*, *New York,* No. 24-CV-2353 (NJC)(JMW), 2024 WL 2977657, at *4 (E.D.N.Y. June 13, 2024) (dismissing Eighth Amendment claim where plaintiff failed to allege that denial of his request "to attend his father's funeral involved unnecessary and wanton infliction of pain"). And relevant to the circumstances in this case, "there is no constitutional right to attend or receive approval for a death-bed visit." *Williams v. New York*, No. 13-CV-0003SC, 2015 WL 249275, at *2 (W.D.N.Y. Jan. 15, 2015). Nevertheless, in limited circumstances, in the context of an inmate's request for leave to visit a dying relative or a request to attend a relative's funeral, if officials deny the request "in order to cause a particular inmate psychological distress . . . such conduct may in some circumstances constitute cruel and unusual punishment and therefore provide a claim for relief under section 1983." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

On July 7, 2025, Plaintiff's family members called Cheshire CI to inform Plaintiff's

counselor and the administration that Plaintiff's grandmother was in hospice care. ECF No. 1, at 3. Plaintiff received approval to visit his grandmother, and although his appointment was rescheduled multiple times, he was ultimately scheduled for July 14, 2025, approximately one week from the time of his family's request. *Id.* Regrettably, his grandmother passed away on July 12, 2025, prior to Plaintiff being able to visit. *Id.*

While the court is sympathetic to Plaintiff for both the loss of his grandmother and his inability to visit with her beforehand, his claims do not support an inference that the wardens wantonly inflicted "pain" upon him so as to be an Eighth Amendment violation. *See*, *e.g., Roman v. Donelli*, 616 F. Supp. 2d 299, 307 (N.D.N.Y. 2007), *aff'd*, 347 F. App'x 662 (2d Cir. 2009) (holding it is within a Superintendent's discretion to grant or deny visits so plaintiff's claims could not "support an inference that defendants wantonly inflicted 'pain' upon plaintiff sufficient to rise to the level of an Eighth Amendment violation"). Plaintiff has pleaded no allegations to show that his request to visit his grandmother was denied or that the wardens rescheduled Plaintiff's request to visit his grandmother for the purpose of causing him psychological distress. Thus, any Eighth Amendment claim pertaining to Plaintiff's inability to visit his grandmother is dismissed.

Next, as to Plaintiff's Fourteenth Amendment due process claim pertaining to his inability to visit his grandmother, he also has failed to plead a plausible claim. Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). "[T[hese interests will be generally limited to

freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

"In order for plaintiff to state a claim for the denial of due process, he must first allege that he was deprived of a liberty or property interest[]," *Roman*, 616 F. Supp. 2d at 305, because of his inability to visit his grandmother before she passed. It is well-settled, however, "that there is no constitutionally protected liberty or property interest in attending the funeral of a family member." *Id*. Inmates also have no liberty interest in participating in "Family Reunion" programs to receive conjugal visits, *Yeldon v. Ekpe*, 159 F. App'x 314, 316 (2d Cir. 2005), nor do they have a constitutional liberty interest in contact visits, *Gawlik v. Reis*, No. 23-CV-1194 (OAW), 2025 WL 744270, at *7–8 (D. Conn. Mar. 7, 2025). Although funeral attendance, conjugal visits, and contact visits are not identical to visiting a relative on hospice, they are similar enough for the court to conclude that there is no protected liberty interest in visiting a relative in dire health while incarcerated.

Moreover, although "there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement[,]" *Quinones v. Quiros*, No. 24-CV-1805 (OAW), 2025 WL 90125, at *2 (D. Conn. Jan. 14, 2025), the court has found no statutory, regulatory, or administrative authority that plausibly gives rise to a liberty interest in visiting a relative outside the confines of a correctional facility. The denial or the delay in visiting an ill relative is well within the terms

of confinement ordinarily contemplated by a prison sentence. Thus, there is no liberty interest in visiting an ill relative which is protected by the Fourteenth Amendment, and any due process claims are dismissed.[3] *See, e.g., Roman*, 616 F. Supp. 2d at 305-07 (granting motion to dismiss due process, equal protection, and Eighth Amendment claims stemming from prison officials' denial of a prisoner's request to visit his wife on her deathbed and to attend her funeral).

**B. <u>ADA & RA</u>**

Plaintiff also brings claims under the ADA and the RA. Because the standards under both the ADA and the RA are, for present purposes the same, the court will evaluate the claims together. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a prima facie case under the ADA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts[ ] and 3) he was denied the opportunity to participate in or

---

[3] To the extent Plaintiff attempts to bring a claim in relation to the grievance process, inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (claim relating to grievance procedures "confuse[d] a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (summary order) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.") (citing *Holcomb*, 337 F.3d at 224); *Kalican v. Dzurenda*, No. 12-CV-1009 (SRU), 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (no constitutional right to receive response to grievance).

benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). There are three theories of discrimination that can be used to establish the third element: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

The court accepts for purposes of initial review that Plaintiff is a qualified individual with a disability because he has limited mobility as a result of injuries to his hand, hip, and knee, his injuries affect his ability to stand for a prolonged period, he requires the use of a knee brace, and he conferred with the Disability Rights Coordinator about using a wheelchair. *See Chimney v. Raines*, No. 325-CV-1317 (OAW), 2026 WL 893250, at *1, 3 (D. Conn. Mar. 31, 2026) (finding for purposes of initial review that plaintiff was a qualified individual with a disability under the ADA because of plaintiff's back problems, arthritis, and obesity and use of a cane to walk). As to the second element of an ADA/RA claim, DOC and its officials, when performing duties under their official capacity, are entities subject to the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) (holding that the ADA "unmistakably includes State prisons and prisoners within its coverage"); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288–89 (2d Cir. 2003)).

Finally, when evaluating a reasonable accommodation claim, a court asks "whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled." *Wright*, 831 F.3d at 72 (internal quotation marks omitted). "A plaintiff need not demonstrate that [he]

is entirely precluded from accessing a benefit; rather, difficulty in accessing a benefit is sufficient to sustain a reasonable accommodation claim." *Goode v. Salias*, No. 24-CV-1010, 2024 WL 3718268, at *7 (D. Conn. Aug. 8, 2024) (internal quotation marks omitted).

Here, Plaintiff complains that he cannot properly use the shower because there are no chairs in the shower for handicap individuals, so he must instead sit on milk crates when showering. ECF No. 1, p. 4. Plaintiff also alleges that he sent grievances to Defendant Gallagher about some shower issues and also to Defendants Rodriguez and Soley. *Id.* at pp. 4–5. Although Plaintiff does not describe the substance of the grievances he sent to Defendants Rodriguez and Soley, the court infers these grievances similarly were related to his shower complaint, as Plaintiff alleges he submitted "multiple grievances on all this." *Id.* at 4. Plaintiff also has attached to his Complaint exhibits, grievances and/or letters he submitted addressing the shower issues, and he includes responses to those grievances and/or letters which he received from Defendants Gallagher, Rodriguez, and Soley.[4] *See* ECF No. 1 at pp. 20–22, 34, 41.

Thus, at this stage of litigation, the court will permit Plaintiff to proceed on his ADA claims for damages as well as declaratory and injunctive relief against Defendants Gallagher, Soley, and Rodriguez in their official capacities only, for their failure to provide accommodations.[5] *See Sanchez v. Mulligan*, No. 22-2923, 2024 WL 2890742, at *3 (2d

---

[4] The court acknowledges that a plaintiff may not rely on exhibits in lieu of alleging facts in the complaint to state a claim against a defendant. *Pires v. Gallagher*, No. 24-CV-1168 (SFR), 2025 WL 2053411, at *3 (D. Conn. July 22, 2025) (citing *Rahim v. Barsto*, No. 22-CV-619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022)). Here, however, Plaintiff alleged facts in his complaint pertaining to the grievances and/or letters he sent to Defendants Gallagher, Rodriguez, and Soley, so the court references these grievances as they are not relied on "in lieu of alleging facts in the complaint to state a claim against a defendant." *Pires*, 2025 WL 2053411, at *3 (D. Conn. July 22, 2025).

[5] The court notes that this initial screening of Plaintiff's complaint is utilized only to determine whether

Cir. June 10, 2024) (summary order) (noting that damages may be appropriate against state official in official capacity on ADA claim if alleged conduct also violated the Fourteenth Amendment). However, because Plaintiff "may not bring a claim pursuant to Title II of the ADA against a state actor in her individual capacity," *Lenti v. Connecticut*, No. 20-CV-127 (SRU), 2020 WL 4275600, at *7 (D. Conn. July 24, 2020), any individual capacity ADA or RA claims are dismissed.

## III. <u>ORDERS</u>

For the foregoing reasons, the court enters the following orders:

1. The case may proceed on Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act against Defendants ADA Coordinator Colleen Gallagher, District Administrator Rodriguez, and Deputy Warden Soley in their official capacities for damages as well as declaratory and injunctive relief.
2. All other claims are DISMISSED.
3. Plaintiff has two options as to how to proceed in response to this Initial Review Order:
    a. If Plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed, in order to attempt to state a viable claim, he shall file an amended complaint on or before **<u>November 30,</u>**

Plaintiff may proceed to the next stage of litigation. The court makes no ultimate determination at this juncture as to whether Plaintiff may be entitled to damages and/or injunctive and declaratory relief.

**<u>2026</u>.** An amended complaint, if filed, will completely replace the original complaint, and the court will not consider any allegations made in the original complaint in evaluating the amended complaint. The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the Complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

b. Alternatively, if Plaintiff wishes to proceed on his Americans with Disabilities Act and Rehabilitation Act claims against Defendants ADA Coordinator Colleen Gallagher, District Administrator Rodriguez, and Deputy Warden Soley in their official capacities **only**, he shall file a notice on the docket on or before **<u>November 30, 2026</u>,** informing the court that he elects to proceed with service as to the claims that survived initial review.

4. If the court receives no response from Plaintiff by the **<u>November 29, 2026</u>,** deadline the court will presume that Plaintiff wishes to proceed on the Complaint as to the claims permitted to go forward in this order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner thereafter.

5. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that Plaintiff MUST notify the court. Failure

to do so may result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

6. Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.
7. The court respectfully asks the Clerk of Court to please terminate Defendants Warden J. Reis and Deputy Warden M. Domitrz as defendants in this action.
8. The court respectfully asks the Clerk of Court to please send Plaintiff a copy of this order.

**IT IS SO ORDERED** at Hartford, Connecticut, this 30th day of October 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE